DUFFICY & SONS, INC., d/b/a Central Denver Ironworks, Inc., a Colorado corporation, Plaintiff–Appellant,

v.

BRW, INC., a Wyoming corporation, and Professional Service Industries, Inc., a Delaware corporation, Defendants–Appellees.

No. 01CA2201.

Colorado Court of Appeals, Div. II.

Nov. 21, 2002.

Rehearing Denied Jan. 9, 2003.

Certiorari Granted Aug. 18, 2003.

Cage, Williams, Abelman & Layden, P.C., Alvin M. Cohen, Denver, Colorado; Kevin M. Dufficy, Denver, Colorado, for Plaintiff–Appellant.

Holland & Hart, LLP, Daniel R. Frost, Joseph W. Halpern, Timothy W. Gordon, Denver, Colorado, for Defendant–Appellee BRW, Inc.

Kennedy & Christopher, P.C., Charles R. Ledbetter, John R. Mann, Denver, Colorado, for Defendant–Appellee Professional Service Industries, Inc.

Opinion by Judge ROY.

Plaintiff, Dufficy & Sons, Inc., appeals from a district court judgment in favor of defendants, BRW, Inc. and Professional Service Industries, Inc. (PSI). We reverse and remand for further proceedings.

The City and County of Denver contracted with BRW to provide licensed engineering services in connection with the design and construction administration of two bridges (the project). Pursuant to the contract, BRW prepared the drawings and specifications for the project, and the project was put out for bid. BRW subcontracted its contract administration obligations, or inspections, to PSI.

The city contracted with a general contractor to construct the project, the general contractor, in turn subcontracted parts of the work. Dufficy subcontracted with an intervening subcontractor for the fabrication, painting, and shipment of portions of the structural steel. As pertinent here, Dufficy further subcontracted the painting and purchased the specified paint from the manufacturer.

The contract between the city and the general contractor incorporated BRW's plans and specifications and required the general contractor to perform and complete all the

work in accordance with the plans and specifications. The subcontractors were similarly bound.

According to the complaint, Dufficy incurred additional expense and delays related to the application of the paint and sought additional compensation through the city's administrative appeal process for public works contracts. That process was the sole contractual remedy for disputes arising between the city and the general contractor, sometimes for the benefit of subcontractors, concerning additional compensation or other adjustment in the contracts. However, before a decision was reached in the administrative proceedings, Dufficy commenced this action in district court.

In its amended complaint, Dufficy alleged that BRW was negligent in preparing, interpreting, and administering the paint system specifications. Dufficy also alleged that PSI was negligent in inspecting the painting and in directing Dufficy's paint subcontractor on how and where to apply the paint. Finally, Dufficy alleged that BRW and PSI, as BRW's agent, negligently misrepresented that Dufficy's painting subcontractor was complying with the plans and specifications.

The trial court granted BRW's motion to dismiss and PSI's subsequent motion for summary judgment based on the economic loss rule and then granted Dufficy's motion for C.R.C.P. 54(b) certification. This appeal followed.

## I.

We review de novo the trial court's rulings on both BRW's motion to dismiss and PSI's motion for summary judgment. *See Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995)(summary judgment); *Fluid Technology, Inc. v. CVJ Axles, Inc.*, 964 P.2d 614 (Colo.App.1998)(motion to dismiss).

## II.

Dufficy contends that the trial court erred in concluding that BRW did not owe Dufficy an independent duty of care in preparing the plans and specifications for the project. More specifically, Dufficy asserts that licensed engineers such as BRW owe contractors and subcontractors an independent professional duty of care in the preparation of plans and specifications, that BRW breached that duty, and that this breach of duty was the proximate cause of Dufficy's damages. BRW, on the other hand, argues that the economic loss rule bars Dufficy's claims. We agree with Dufficy.

The supreme court has adopted the economic loss rule, which states that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. Azco Construction, Inc.*, 10 P.3d 1256, 1264 (Colo.2000).

The economic loss rule is intended to maintain the boundary between contract and tort and to prevent tort law from swallowing the law of contracts. As the supreme court stated:

In this way, the law serves to encourage parties to confidently allocate risks and costs during their bargaining without fear that unanticipated liability may arise in the future, effectively negating the parties' efforts to build these cost considerations into the contract. The economic loss rule thus serves to ensure predictability in commercial transactions.

*Town of Alma v. Azco Construction, Inc., supra*, 10 P.3d at 1262. The court also held that the rule applies not only to the contracting parties, but also to third-party beneficiaries who may have a cause of action for breach of contractual duties. However, the supreme court expressly limited the rule to those instances in which there is no independent duty of care under tort law.

Colorado courts have not previously recognized an independent common law duty of care owed by a licensed engineer to a contractor or subcontractor who relies on the plans and specifications prepared by the engineer. Because we now conclude there is such an independent duty of care under the tort law, we hold that the economic loss rule does not preclude Dufficy's tort claims here.

Whether a defendant owes a duty to a plaintiff is a question of law for the court, as is the scope of that duty. *See Bath Excavating & Construction Co. v. Wills,* 847 P.2d 1141 (Colo.1993). Whether the defendant has breached that duty and thereby caused the plaintiff damages is a question of fact for the jury. *See Perreira v. State,* 768 P.2d 1198 (Colo.1989).

In determining whether to recognize a duty, courts must consider many factors, including the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden on the actor. *See Taco Bell, Inc. v. Lannon,* 744 P.2d 43 (Colo.1987). No one factor is controlling, and the question of whether a duty should be implied is essentially one of fairness under contemporary standards, because foreseeable events include those likely enough in the setting of modern life that a reasonably thoughtful person would take them into account in guiding his or her practical conduct. *See Hilberg v. F.W. Woolworth Co.,* 761 P.2d 236 (Colo.App.1988), *overruled in part by Casebolt v. Cowan,* 829 P.2d 352 (Colo.1992). Thus, a conclusion that a duty does or does not exist is an expression of policy considerations that lead the law to say whether a plaintiff is entitled to protection. *See Casebolt v. Cowan, supra.*

Applying the factors listed above and the policy reasons underlying the imposition of a duty of care, we now conclude that a licensed engineer owes a duty of care to the contractors and subcontractors with respect to the plans and specifications drafted and prepared by the engineer and relied upon by the contractor or subcontractor.

Contractors clearly are subject to a substantial risk of loss by relying on the plans and specifications prepared by licensed engineers that they are obligated to implement. Licensed engineers can certainly foresee that contractors may suffer losses if the plans and specifications are faulty. Indeed, the very purpose of preparing plans and specifications is to provide contractors with the necessary details and instructions to carry out their construction activities.

Moreover, extending the licensed engineers' duty of care to contractors and subcontractors who work on a project does not impose a great burden on licensed engineers. Licensed engineers are already bound by duties imposed by their licensing authority. The regulations of the State Board of Registration for Professional Engineers and Surveyors provide that engineers are obligated to "approve and seal only those design documents" that are "in conformity with accepted engineering ... standards." Dep't of Regulatory Agencies Rule 3.1.3, 4 Code Colo. Regs. 730–1. Requiring licensed engineers to produce plans and specifications in accordance with professional standards merely requires them to perform their duties at a level that meets the reasonable expectation of those who employ and rely upon them.

We also conclude that placing a burden of reasonable care on a licensed engineer will benefit the construction industry. The risk of liability will provide engineers with incentive to perform their duties in conformity with the professional standards. Additionally, imposing losses occasioned by defective plans or specifications on the engineer shifts the risk of loss onto the person best able to control the risk.

Although some courts have reached the opposite conclusion, a majority of the appellate courts considering the issue have concluded that a licensed engineer owes a contractor a duty of care. *See Mayor v. Clark-Dietz & Associates–Engineers, Inc.,* 550 F.Supp. 610 (N.D.Miss.1982)(finding that failure of architect to perform contractual obligations to contractor to supply sufficient design for levee and bridge rendered him liable in tort to contractor for extra construction expenses proximately caused by the negligent design); *Donnelly Construction Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984)(holding that contractor alleging substantial error in plans and specifications prepared by architects for property owners stated a cause of action for negligence and negligent misrepresentation because it was foreseeable that contractor, hired to follow plans and specifications pre-

pared by architects, would incur increased costs if those plans and specifications were in error); *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 463 S.E.2d 85 (1995) (holding that design professionals owe a professional duty to the contractor, arising separate from any contractual duties between the parties or with third parties, not to design or supervise the project negligently); *see also* Frank D. Wagner, Annotation, *Tort Liability of Project Architect for Economic Damages Suffered by Contractor*, 65 A.L.R.3d 249, 256 (1975).

Finally, before adopting the economic loss rule, Colorado courts recognized a similar duty owed by an architect to an owner for the negligent design of a building. *Kellogg v. Pizza Oven, Inc.*, 157 Colo. 295, 402 P.2d 633 (Colo.1965). In *Kellogg*, the court made it clear that the claim was in negligence, not contract, and stated that:

> The jury was instructed that they could find for Pizza and against the Architects if the latter were "negligent in the furnishing of the preliminary estimate and that the plaintiff reasonably relied upon such preliminary estimate; or that the defendants were negligent in their supervision of the construction work; and that such alleged negligence was the proximate cause of damages to the plaintiff." It is our view that this is a correct statement of the law.

*Kellogg v. Pizza Oven, Inc., supra*, 157 Colo. at 299, 402 P.2d at 635; *see also Perlmutter v. Flickinger*, 520 P.2d 596 (Colo.App. 1974)(not published pursuant to C.A.R. 35(f)); CJI Civ. 15:26 (2001). The duty that we recognize today is merely a logical extension of the duty owed the owner, which has already been recognized, albeit before the supreme court's adoption of the economic loss rule. *See Kellogg v. Pizza Oven, Inc., supra; Perlmutter v. Flickinger, supra.*

Therefore, because here BRW was the project's engineer, it owed Dufficy an independent duty to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of that profession and to perform faithfully and diligently any service undertaken as an engineer in the man-

ner a reasonably prudent engineer would under the same or similar circumstances.

Having so concluded, we need not address Dufficy's negligent misrepresentation claim against BRW to the extent that it relates to any negligence in the preparation of the plans and specifications for the project.

### III.

■ Dufficy also contends that the trial court erred in concluding that PSI, as BRW's agent, did not owe Dufficy an independent duty of care for its inspection of the paint applications on the project. Specifically, Dufficy asserts that PSI, as BRW's agent and project inspector, owed the contractors and subcontractors an independent professional duty of care in inspecting and directing the work of the project. We agree.

Under the same rationale discussed above, we conclude that inspectors owe the same professional duty of care as architects and engineers.

Accordingly, here, because PSI was an agent of BRW and performed the work of a design professional, specifically as the project's inspector, it owed Dufficy a duty to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of that profession and to perform faithfully and diligently any service undertaken as an inspector in the manner a reasonably prudent inspector would under the same or similar circumstances.

### IV.

Finally, Dufficy contends that the trial court erred in concluding that its negligent misrepresentation claims against BRW and PSI relating to the supervision and inspection of Dufficy's painting subcontractor are barred by the economic loss rule. We agree.

BRW contracted with the city to supervise the construction of the project and to assure compliance with the construction document, that is, the plans and specifications. BRW subcontracted some or all of that obligation to PSI.

■■ It is well established that in some circumstances a claim of negligent misrepre-

sentation based on principles of tort law, independent of any principle of contract law, may be available to a party to a contract. It is equally well established that when the alleged negligent conduct is a breach of a duty that arises under the provisions of a contract, the duty is not independent of the contractual obligation, and the claim must be addressed in contract, not tort. *Buell v. Security General Life Insurance Co.,* 779 F.Supp. 1573 (D.Colo.1991), *aff'd in part and rev'd in part,* 987 F.2d 1467 (10th Cir.1993); *Town of Alma v. Azco Construction, Inc., supra; Scott Co. v. MK–Ferguson Co.,* 832 P.2d 1000 (Colo.App.1991).

Dufficy relies on the supreme court's decisions in *Keller v. A.O. Smith Harvestore Products, Inc.,* 819 P.2d 69 (Colo.1991), and *Town of Alma v. Azco Construction, Inc., supra.* In *Keller,* the supreme court found that a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim. In *Azco,* the supreme court cited *Keller* and stated that "[i]n these situations where we have recognized the existence of a duty *independent* of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim." *Town of Alma v. Azco Construction, Inc., supra,* 10 P.3d at 1263.

These cases are dispositive of the issue before us. Although *Keller* concerns negligent misrepresentations during negotiations before execution of a contract, we decline to read that decision narrowly and instead apply the same reasoning here to the alleged misrepresentations made after execution of the contract.

Here, the negligent misrepresentation claim rests on BRW's and PSI's contractual duties to the city and to each other. Dufficy alleges PSI, as BRW's agent, represented that Dufficy's subcontractor "was performing its contractual obligations ... in strict accordance with [the paint manufacturer's] instructions and the Contract Documents" and that "primed bridge components were ready for topcoating." BRW, and its subcontractor, PSI, were contractually obligated to the city to "observe and systematically review the performance of the construction contract(s) in such a manner and at such times as is necessary to determine that the work has been or is being installed in conformance with the Contract Documents." We conclude that although the alleged misrepresentations arose out of duties owed by BRW and PSI to the city pursuant to the contracts, a contractor or subcontractor has an independent tort claim for negligent misrepresentation.

Therefore, because Dufficy's negligent misrepresentation claims are based on an independent tort claim, Dufficy is not barred from recovery by the economic loss rule.

Accordingly, the judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge JONES and Judge CASEBOLT concur.