**SELCO COMMUNITY CREDIT UNION, Midwest America Federal Credit Union, Veridian Credit Union, and Kemba Financial Credit Union, on behalf of themselves and a class of similarly situated Financial Institutions, Plaintiffs,**

v.

**NOODLES & COMPANY, Defendant.**

**Civil Action No. 16–cv–02247–RBJ Consolidated with 16–cv–02497–RBJ and 16–cv–02632–RBJ**

United States District Court, D. Colorado.

Signed 07/21/2017

Brian C. Gudmundson, Zimmerman Reed, P.L.L.P., Karen Hanson Riebel, Kate M. Baxter–Kauf, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, Charles Hale Van Horn, Berman Fink Van Horn, P.C., Atlanta, GA, Erin Green Comite, ScottScott, Attorneys at Law, LLP, Stephen John Teti, Scott & Scott, LLP, Colchester, CT, Gary F. Lynch, Jamisen A. Etzel, Carlson Lynch Sweet Kilpela & Carpenter LLP, Pittsburgh, PA, James J. Pizzirusso, Swathi Bojedla, Hausfeld, LLP, Washington, DC, Joseph Peter Guglielmo, Scott & Scott, Attorneys at Law, LLP, New York, NY, for Plaintiffs.

Paul Gregory Karlsgodt, Xakema Henderson, Baker & Hostetler, LLP, Denver, CO, for Defendant.

### ORDER GRANTING DEFENDANT's MOTION TO DISMISS

R. Brooke Jackson, United States District Judge

Defendant Noodles & Company moves to dismiss plaintiffs' amended consolidated complaint. ECF No. 34. The motion is granted. Accordingly, plaintiffs' renewed motion for appointment of interim class counsel, ECF No. 47, is moot.

### BACKGROUND

In early 2016 hundreds of Noodles & Company restaurants suffered a cyberattack targeting customers' credit and debit card information. Plaintiffs are four credit

unions whose cardholders' information might have been compromised by the data breach. Plaintiffs allege that because of the breach they have had to cancel and reissue affected cards, close and reopen the corresponding accounts, respond to cardholders' inquiries about the breach, monitor accounts for fraudulent charges, investigate such charges, and refund cardholders for any unauthorized charges that went through. Plaintiffs also claim to have lost revenue due to their cardholders' decrease in credit and debit card usage after the breach was publicized.

In September 2016 plaintiff SELCO Community Credit Union filed suit against Noodles & Company for its alleged failure to prevent the data breach. ECF No. 1. Two months later this case was consolidated with two other actions, ECF No. 23, and on November 30, 2016 plaintiffs filed an amended consolidated class action complaint, ECF No. 27. This complaint seeks to bring an action for negligence, negligence per se, and declaratory relief for the plaintiffs individually and on behalf of all other similarly situated financial institutions. Plaintiffs have filed a motion for appointment of interim class counsel, ECF No. 28, and they recently renewed this motion, ECF No. 47.

On January 17, 2017 Noodles & Company filed a motion to dismiss. ECF No. 34. The motion has been fully briefed. ECF Nos. 36, 43.

## STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See Twombly*, 550 U.S. at 556, 127 S.Ct. 1955. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

## ANALYSIS

■ Noodles & Company primarily argues that the economic loss rule bars plaintiffs' claims. The economic loss rule generally forbids recovery in tort for pure financial losses caused by a defendant's negligence in its performance of a contractual duty. Noodles & Company asserts that plaintiffs' alleged economic injuries are not cognizable under a negligence theory because its duty of care was specified by the network of interrelated contracts among the company, its bank, the bank card associations, and plaintiffs.

■ However, before reviewing the merits of this argument, the Court must consider which state's tort law applies to this dispute. Noodles & Company contends that a choice of law analysis would select the laws of plaintiffs' home states, and that the economic loss rules of these states (as well as Colorado) uniformly bar plaintiffs' claims. In response, plaintiffs argue that the analysis would actually favor applying Colorado law and, in any event, that there is no conflict between the laws of Colorado

and plaintiffs' home states because each state would recognize their claims.

■ When more than one body of law may apply to a claim, the Court "need not choose which body of law to apply unless there is an outcome determinative conflict between the potentially applicable bodies of law." *Iskowitz v. Cessna Aircraft Co.*, No. 07-CV-00968-REB-CBS, 2010 WL 3075476, at *1 (D. Colo. Aug. 5, 2010); *see also* Restatement (Second) of Conflict of Laws § 145 cmt. i (1971) ("When certain contacts involving a tort are located in two or more states with identical local law rules on the issue in question, the case will be treated for choice-of-law purposes as if these contacts were grouped in a single state."). If there is no such conflict there is no choice of law issue, and the forum state's law applies.

Although each state's economic loss rule has its own nuances, the relevant states all have a core standard in common. Every state at issue here—Colorado, Oregon, Ohio, Indiana, and Iowa—has adopted the economic loss rule. *See Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000); *Abraham v. T. Henry Const., Inc.*, 350 Or. 29, 249 P.3d 534, 540 (2011); *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 835 N.E.2d 701, 704 (2005); *Indianapolis–Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 736 (Ind. 2010); *Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 504 (Iowa 2011).

As plaintiffs point out, each of these states also has an exception allowing for recovery of economic losses due to the breach of a duty arising independently of

any contractually created duties. *See Town of Alma*, 10 P.3d at 1264 (holding that Colorado's economic loss rule applies "absent an independent duty of care under tort law"); *Abraham*, 249 P.3d at 540 (noting that Oregon's economic loss rule applies unless the tortfeasor is subject to "a standard of care that is independent of the terms of the contract," such as when a statute or special relationship provides for a heightened duty of care); *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006) ("Ohio law prevents the recovery of purely economic losses in a negligence action...where recovery of such damages is not based upon a tort duty independent of contractually created duties."); *Indianapolis–Marion Cnty. Pub. Library*, 929 N.E.2d at 736 (anticipating exceptions to Indiana's economic loss rule for breach of independent duties of care including "lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, [and] breach of a duty to settle owed by a liability insurer to the insured"); *Annett Holdings*, 801 N.W.2d at 504, 506 n.3 (noting that the independent duty inquiry "rephrases the question, but does not answer it," yet recognizing such exceptions from the economic loss rule under Iowa law for "claims of professional negligence against attorneys and accountants" and "when the duty of care arises out of a principal-agent relationship").

■ Since all of the relevant states have comparable independent duty exceptions to the economic loss rule, there is no outcome-determinative conflict of law here. Accordingly, Colorado law controls this dispute, though the outcome of this case would necessarily be the same if the laws of plaintiffs' home states applied instead.[1]

1. Colorado law would apply here even if this case did present a conflict of law. The Court must apply the choice of law rules of Colorado (the forum state), which follows the Restatement (Second) of Conflict of Laws. *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014). Several Restatement factors support applying Colora-

■ On the merits, Noodles & Company argues that the duties of care it allegedly breached stem not from an independent duty, but from the series of contracts governing plaintiffs' payment-card networks. When a customer swipes a credit or debit card at Noodles & Company the merchant routes the payment request through a payment-card network governed by a bank card association, the largest of which are Visa and MasterCard. The transaction is sent electronically to the customer's "issuing bank," the financial institution that issued the payment card. (SELCO Community Credit Union and the other plaintiffs are issuing banks.) After the issuing bank authorizes the transaction Noodles & Company notifies its "acquiring bank," the financial institution that processes credit and debit card payments for the merchant. The acquiring bank forwards funds to Noodles & Company to satisfy the transaction, and it is then reimbursed by the customer's issuing bank. Am. Compl., ECF No. 27 at ¶ 22; Mot. to Dismiss, ECF No. 34 at 2.

■ Both Visa and MasterCard have sets of rules that directly regulate issuing banks and acquiring banks. These rules are passed on through issuing banks' agreements with cardholders and acquiring banks' agreements with merchants. *See* Am. Compl., ECF No. 27 at ¶¶ 25, 32; Mot. to Dismiss, ECF No. 34 at 2–3; *see also, e.g.,* Visa Rules, ECF No. 34-1, § 1.10.4.1 ("A Member must ... [e]nsure that agreements and contracts with agents and Merchants clearly establish their responsibility to meet Visa standards...."); MasterCard Rules, ECF No. 43-2, § 5.1 ("Each...Acquirer must directly enter into a written Merchant Agreement with each Merchant....").[2] This chain of contractual relationships is illustrated in the diagram below.

do law over the laws of plaintiffs' home states. In particular, plaintiffs allege that Noodles & Company's tortious conduct occurred at the company's headquarters in Colorado; more weight is accorded to the location of this conduct than normal because the resulting injuries occurred in multiple states; and the location of these injuries is fortuitous because the Noodles & Company customers whose information was compromised could have belonged to banks located anywhere in the world. *See* Restatement (Second) of Conflicts § 145 & cmt. e (1971).

2. "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002)).

The bank card associations' rules require merchants like Noodles & Company to abide by certain procedures in handling cardholders' financial information. Most relevant here, Visa's and MasterCard's rules require merchants to comply with the Payment Card Industry Data Security Standard ("PCI DSS"). Visa Rules, ECF No. 34–1, § 1.10.4.1; MasterCard Sec. Rules & Proc., ECF No. 34–3, § 10.1. That standard consists of the following list of best practices for data security in the payment card industry:

### Build and Maintain a Secure Network

1) Install and maintain a firewall configuration to protect cardholder data

2) Do not use vendor-supplied defaults for system passwords and other security parameters

### Protect Cardholder Data

3) Protect stored cardholder data

4) Encrypt transmission of cardholder data across open, public networks

### Maintain a Vulnerability Management Program

5) Protect all systems against malware and regularly update anti-virus software or programs

6) Develop and maintain secure systems and applications

### Implement Strong Access Control Measures

7) Restrict access to cardholder data by business need to know

8) Identify and authenticate access to system components.

9) Restrict physical access to cardholder data

### Regularly Monitor and Test Networks

10) Track and monitor all access to network resources and cardholder data

11) Regularly test security systems and processes

### Maintain an Information Security Policy

12) Maintain a policy that addresses information security for all personnel.

Am. Compl., ECF No. 27 at ¶ 27 (quoting PCI Security Standards Council, *PCI DSS Quick Reference Guide: Understanding the Payment Card Industry Data Security*

*Standard version 3.2*, at 9 (May 2016), https://www.pcisecuritystandards.org/documents/PCIDSS_QRGv3_2.pdf? agreement=true&time=1472840893444). The PCI DSS also "sets forth detailed and comprehensive requirements that must be followed to meet each of the 12 mandates." *Id.* at ¶ 28.

■ In plaintiffs' view, these rules and standards are merely "proof that Noodles was aware that it had adopted a duty of care related to obtaining, processing, and protecting Plaintiffs' customers' personal and financial information." Resp., ECF No. 36 at 9. They allege that "independent" duties applicable to Noodles & Company include a duty to use reasonable care "in obtaining and processing" customers' payment-card data, a duty to "provide adequate security" to protect customers' data, and a duty to "prevent the foreseeable risk of harm to others." [3] *Id.* at 10. Plaintiffs contend that these duties are not "imposed by a contract," but instead are "separate and apart from any contractual duties." *Id.*

■ I am not persuaded. Rather, in my view, the duties identified by plaintiffs are not independent of Noodles & Company's contractual obligation to comply with the PCI DSS. Three factors aid in determining the source of a legal duty: "(1) whether the relief sought in negligence is the same as the contractual relief; (2) whether there is a recognized common law duty of care in negligence; and (3) whether the negligence duty differs in any way from the contractual duty." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004).

Plaintiffs here seek both monetary and injunctive relief; they cite no support for the existence of specific common law or statutory duties of care related to data security; and, most important of all, these duties are "created by, and completely contained in, the contractual provisions." *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1270 (Colo. 2000).

The PCI DSS's twelve requirements incorporate dozens of specific directions to maintain secure payment-card processing systems and protect cardholder data. *See* PCI Security Standards Council, *supra*, at 12–25. For example, the standards require merchants to "[p]rotect all system components and software from known vulnerabilities by installing applicable vendor-supplied security patches," ensure that internal vulnerability scans do "not contain high-risk vulnerabilities in any component in the cardholder data environment," "[p]rohibit direct public access between the Internet and any system component in the cardholder data environment," "[e]nsure that all anti-virus mechanisms are kept current," and "[u]se network intrusion detection and/or intrusion prevention techniques to detect and/or prevent intrusions into the network." *Id.* at 12, 17, 23.

■ Plaintiffs focus on Noodles & Company's alleged failure to implement these exact best practices that it was contractually obligated to follow. *See* ECF No. 36 at 1. However, "even if [a] duty would be imposed in the absence of a contract, it is

---

**3.** Plaintiffs allege that the second duty of care—requiring Noodles & Company to use reasonable data security measures—arises both from the common law and from the Federal Trade Commission ("FTC") Act's prohibition on "unfair...practices in or affecting commerce." 15 U.S.C. § 45(a)(1). But whatever the source of a purportedly independent duty, the Court must "focus first on the con-

tractual context among and between the parties to see whether there was a contractual relationship that established the duty of care alleged to have been breached." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004). As a result, the analysis below applies equally to plaintiffs' negligence and negligence per se claims.

not independent of a contract that 'memorialize[s]' it." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (quoting *BRW*, 99 P.3d at 74); *see also, e.g., Makoto USA, Inc. v. Russell*, 250 P.3d 625, 627 (Colo. App. 2009) ("[I]ndependence is not shown simply because a duty also exists outside the contract."). And even if plaintiffs think Noodles & Company should have done more, the PCI DSS appears to flesh out the entirety of the more general duties that plaintiffs say Noodles & Company breached.

Moreover, the only breach plaintiffs identify that does not appear to be covered by the PCI DSS—Noodles & Company's alleged failure to upgrade its point-of-sale systems to accept chip-based smart payment cards—is similarly a duty Noodles & Company "agree[d]" to take on. ECF No. 36 at 1; ECF No. 27 at ¶ 32. According to plaintiffs, "the payment card industry also set rules requiring all businesses to upgrade to new card readers that accept EMV chips" by October 1, 2015. ECF No. 27 at ¶¶ 30–31. Plaintiffs claim that "[u]nder Card Operating Regulations, businesses accepting payment cards, but not meeting the October 1, 2015 deadline, agree to be liable for damages resulting from any data breaches." *Id.* at ¶ 32. Plaintiffs have thus failed to direct the Court's attention to any duties of care Noodles & Company may have breached that "differed from the dut[ies] arising out of [its] contracts." *BRW*, 99 P.3d at 74.

■ It makes no difference that Noodles & Company's contractual duties arise from a web of interrelated agreements coordinated by Visa and MasterCard rather than bilateral contracts between the merchant and plaintiffs. "The policies underlying the application of the economic loss rule to commercial parties are unaffected by the absence of a one-to-one contract relationship. Contractual duties arise just as surely from networks of interrelated contracts as from two-party agreements." *BRW*, 99 P.3d at 72. Plaintiffs argue that they "do not contract with Noodles and are not in a position to 'reliably allocate risks and costs during their bargaining,' because they are not parties to those contracts." ECF No. 36 at 10 (quoting *BRW*, 99 P.3d at 72). But the case plaintiffs cite rejects this very argument, writing that "[i]n such a contract chain, the parties do have the opportunity to bargain and define their rights and remedies, or to decline to enter into the contractual relationship if they are not satisfied with it." *BRW*, 99 P.3d at 72.

What's more, the Visa and MasterCard agreements include contractual remedies that may address Noodles & Company's alleged wrongdoing. MasterCard's rules "enable[ ] an Issuer to partially recover costs incurred in reissuing Cards and for enhanced monitoring of compromised and/or potentially compromised MasterCard Accounts associated with an [Account Data Compromise] Event." MasterCard Sec. Rules & Proc., ECF No. 34-3, § 10.2.5.3. These rules also enable partial recovery of certain fraud losses attributable to such a data compromise event. *Id.* MasterCard reserves the right to determine if an event qualifies for this loss shifting, and it may choose to limit an issuing bank's operational reimbursement or fraud recovery. *Id.* The parties have submitted only a short excerpt of Visa's rules, but this includes a provision making acquiring banks liable under certain circumstances when their merchants suffer counterfeit losses. Visa Rules, ECF No. 34-1, § 10.11.1.1. Although this provision is narrower than MasterCard's comprehensive reimbursement rules, it suggests that Visa either might have developed a similar rule, which the parties have not

filed with the Court; or that it intentionally did not adopt such a policy, in which case plaintiffs were on notice that Visa's terms were not as favorable in the event of a data breach. MasterCard presumably included an issuing bank reimbursement policy in its rules because Visa and Master-Card require these banks to hold their customers harmless for most types of fraudulent transactions made with their cards. *See* Visa Rules, ECF No. 34–1, § 4.1.13.3; MasterCard Sec. Rules & Proc., ECF No. 34–2, § 6.3. This Court has no business sidestepping the agreements that sophisticated commercial entities like plaintiffs and Noodles & Company voluntarily entered into to allocate the risk of payment-card fraud.

In sum, "the duties allegedly breached were contained in the network of interrelated contracts, and the economic loss rule applies." *BRW*, 99 P.3d at 74. Plaintiffs' negligence and negligence per se claims are thus dismissed.[4] Since plaintiffs' substantive claims fail, their request for declaratory relief must also be dismissed.

## ORDER

1. Defendant's Motion to Dismiss [ECF No. 34] is GRANTED. Plaintiffs' Amended Consolidated Class Action Complaint is dismissed with prejudice. As the prevailing party, defendant is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

2. Plaintiffs' Renewed Motion for Appointment of Interim Class Counsel [ECF No. 47] is MOOT.

4. Plaintiffs' negligence per se claim would fail even if they had put forward an independent duty of care arising from Section 5 of the FTC Act. To state a claim for negligence per se, plaintiffs must show that "the statute was intended to protect against the type of injury she suffered and that she is a member of the group of persons the statute was intended to protect." *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1166 (Colo. 2002). Here, "[t]he paramount aim of the act is the protection of the public from the evils likely to result from the destruction of competition or the restriction of it

in a substantial degree...." *FTC v. Raladam Co.*, 283 U.S. 643, 647–48, 51 S.Ct. 587, 75 L.Ed. 1324 (1931). Section 5 in particular seeks to protect "consumer[s]" and "competitor[s]" from "unfair trade practice[s]." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972). Plaintiffs have alleged no harm from "the destruction of competition," and they are neither Noodles & Company's consumers nor its competitors, so they cannot recover under a theory of negligence per se based on alleged violations of the FTC Act.