[No. 6157.]

UNION PACIFIC RAILROAD COMPANY v. STUPECK.

1.   Contract—Signature in the Name of Another—A contract limiting the liability of a railroad company for goods delivered to it for carriage, affects the owner of the goods, who makes the shipment, even although he signed such contract with the name of another person.—(153)

2.   Common Carriers—Contract Limiting Liability—A contract limiting the liability of the common carrier for goods entrusted to him, is without effect, unless both just and reasonable.—(156)

The shipper is not bound by a stipulation in the bill of lading, to the effect that, in consideration of a lower rate, the goods shall be carried at his risk, and that the value does not exceed a sum mentioned, where there is no examination as to the value of the shipment, the shipper makes no representation as to such value, and the valuation is arbitrarily fixed by the classi-

fication of the shipment, designated in the tariff schedule, without regard to value, and in fact, the value greatly exceeds the sum so arrived at.—(157, 158)

The pretended valuation in such case is purely fictitious, and no more than an arbitrary pre-adjustment of the damages which shall attend the loss.—(157)

3. ——Negligence Presumed from Loss—Where the shipper proves delivery of the goods to the carrier, and loss, negligence of the carrier is presumed, and he is liable unless he can establish that the loss was within the exceptions set down in his contract.—(158, 159)

*Appeal from Denver District Court* — Hon. PETER L. PALMER, Judge.

Messrs. DORSEY & HODGES and Mr. EDWARD I. THAYER for appellant.

Mr. HENRY B. BABB and Mr. EWING ROBINSON for appellee

Mr. JUSTICE GABBERT delivered the opinion of the court:

Max Stupeck, plaintiff, brought suit against the railroad company to recover the value of one case or box of cloths, used for making men's and boys' clothing, which he claimed to have delivered the defendant at the City of Denver, for transportation to the City of New York. The trial resulted in a verdict and judgment for plaintiff in the sum of $862.50. The defendant has appealed.

The evidence discloses that plaintiff paid in advance the sum of $20.40 freight charges; that the box weighed 750 pounds; that, in the bill of lading, it was designated "Personal effects"; that the tariff charged by the defendant company for such articles from Denver to New York was $20.40, if transported at the risk of the shipper, under a special contract limiting the liability of the company to a sum not exceeding five dollars per hundredweight, but was $30.60 if carried at the risk of the company. The

conditions of the bill of lading, so far as necessary to consider, are:

"The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property, at the place and time of shipment under this bill of lading, unless a lower rate has been agreed upon, or is determined by the classification upon which the rate is based, in either of which events, such lower rates shall be the maximum price to govern such computation. * * * When two rates are provided for the transportation of the same kind of property, the lower thereof, conditioned upon the shipper assuming risks of transportation or releasing to a certain valuation, and the shipper desires to avail himself of said lower rate, the form of special contract and release on the back thereof must be filled in and signed by the shipper; otherwise, the higher rate will be charged and collected."

Upon the back of the bill of lading is the following printed form, which was filled in by the agent of defendant, and signed by the plaintiff:

## "RELEASE.

"I hereby certify that I desire to receive the benefit of any lower rate provided for freight, conditional upon carrier's being released, or at owner's risk, and in consideration of such lower rate being applied on the within named shipment, I hereby assume all risk necessary to receive such benefit.

"It is also hereby agreed that the value of the property does not exceed $5.00 per cwt."

The name signed to the release is in Hebrew characters, and there is a dispute as to whether, when translated, it reads "Max Stupeck" or "Max Berman"; but we do not regard that as of any material moment, as it appears, without question, that plaintiff made the shipment, and was the owner of the contents of the box.

Plaintiff testified, in substance, that he informed the agent of the defendant that the box contained woolen goods; that a bill of lading was made out; that he was asked to sign it; that he asked the agent why he should sign it, to which the agent replied: "You sign it"; that he did so, and was then told to pay the freight charges, which he did.  He further testifies that nothing was said to him about two rates.

The agent of the company who received the box on behalf of defendant, testified that he wrote in the bill of lading, "One box of personal effects," on information from the shipper that such was their character; that nothing was said about woolen goods; and that, according to the railroad tariff schedule, by which freight rates are fixed, personal effects meant (reading from the schedule) "household goods not for sale or speculation, personal effects, second-hand furniture, etc.—carrier's liability limited to five dollars a cwt. in case of loss or damage, and so receipted and paid for, prepaid, first class."

Counsel for defendant asked the witness if he knew how many rates there were for the shipment of personal effects from Denver to New York City, to which he replied, "Two." He was then asked if he remembered what they were, or could tell from the railroad tariff schedule; his answer being that he could.  Continuing his examination, the following interrogatories were propounded:

"Q.—I will hand you a 'Western Classification No. 39, Rules and Conditions,' and ask you to find therein the rate for personal effects.  A.—Household goods and personal effects, first class released; not released—

"Q.—What was the first-class rate?  A.— $2.80 to New York, and $4.20.

"Q.—Do you know what rate was charged Mr. Berman?  A.—$2.80 a hundred.

"Q.—Do you know whether you told him anything about two rates?   A.—I explained to him that if goods were released to the valuation of five dollars, and explained to him what the rules meant, that he could ship the goods. I explained to him what this release meant, he could ship the goods as first class. I told him if it was not released it would be half again as much as though they were released, and he was going to ship at the reduced rate; and showed him the form on the back of the bill of lading for that purpose, and I filled it out and explained to him what it was, and he signed it.

"Q.—Did he tell you anything about the actual value other than contained in this bill of lading? A.—Not a thing.

"Q.—Did he make any objections to signing this bill of lading?   A.—No objections at all."

It will be observed that there is a dispute as to whether plaintiff told the agent of defendant that the box contained woolen goods, or personal effects, as written in the bill of lading; but this is of no special importance, in considering the main contention of counsel for the railroad company, that by the bill of lading the plaintiff was limited in the amount of his recovery to five dollars per hundredweight, or the sum of $37.50.

Counsel for the defendant company concede that, under the previous decisions of this court, a common carrier cannot be exempted from liability for negligence, but they contend that when, by a special contract, in consideration of a reduced rate, the maximum value of the property shipped is agreed upon, the shipper, in case of loss through the negligence of the common carrier, cannot recover more than the value thus fixed; that is to say, they contend that such a contract is valid and binding upon the shipper. In support of this contention, *Hart v. Pennsylvania Railroad Company*, 112 U. S. 331—the leading

case on the subject—and many others following it, are cited. These cases are based upon the ground that the shipper agreed upon a valuation in order to obtain, and did thereby obtain, a lower rate of freight than would have been charged if the value had not been agreed upon, the rate for transportation being based upon such valuation. In other words, these cases sustain such an agreement between the shipper and carrier, even when loss is due to the negligence of the latter, upon the theory that the shipper has agreed upon a value in consideration of a reduced rate of freight fixed in accordance therewith. That such is the basis upon which the cases in question rest is well illustrated by the last paragraph of the opinion in the Hart case, which reads:

"The distinct ground of our decision in the case at bar is, that where a contract of the kind signed by the shipper is fairly made, agreeing on a valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations."

No doubt the shipper, in some instances, may consent to a limitation of the common-law liability of a common carrier, although the decisions are not in harmony as to how far considerations of public policy will allow the stringency of the ancient rule to be relaxed by mutual special agreement; but, in the language of Mr. Justice McKenna, in *Cau v. Texas & Pacific Ry. Co.*, 194 U. S. 427, "There can be no stipulation for any exemption by a carrier which is not just and reasonable in the eye of the law."

In the cases relied upon by counsel for the de-

fendant, like the Hart case, it appears there was a valuation, which was either definite or not in excess of a specified sum, agreed upon with reference to the real value of the articles shipped. Such is not the character of the bill of lading in the case at bar, and for this reason it is distinguishable from the Hart case. It is, therefore, unnecessary for us to express views with respect to an exemption of liability sought to be taken advantage of under the terms of a bill of lading, which is not involved.

It is evident from the conditions of the bill of lading under consideration, and other testimony, that the valuation named, or the extent of the liability of the railroad company in case of loss, was arbitrarily determined by the classification of the shipment upon which the rate charged was based. The agent of the defendant made no inquiry as to the value of the contents of the box; neither did the plaintiff make any representations as to their value. The box was designated in the bill of lading as containing personal effects, which the agent of defendant says embraces household goods not for sale, second-hand furniture, wearing apparel, etc., and because of the provisions or conditions of the railroad tariff schedule, which designates how the liability of the carrier shall be determined on shipments of personal effects in consideration of a reduced rate of carriage, he arbitrarily and without reference to the real value of the articles, inserted in the bill of lading that the value of the contents of the box did not exceed five dollars per hundredweight. A valuation of such articles at the rate of five dollars per hundred pounds would certainly not represent their actual value, in any sense. They are not bought or sold by weight, neither is, nor can, their value be determined in that manner. Such a valuation is purely fictitious. In short, the attempt to value the shipment by weight amounted

to nothing more than an arbitrary pre-adjustment of damages in case of loss, without regard to value; so that the case falls within the rule so often announced, to the effect that a stipulation or clause in a bill of lading limiting the liability of the carrier for damages to the subject of carriage to a sum purporting to be an agreed valuation, but which, in fact, is purely fictitious and is nothing more than an attempt to limit the carrier's liability to an arbitrary amount, without regard to the value of the shipment, is void, and will not bind the shipper, although assented to in writing and executed upon consideration of a reduced rate of freight.—*Ullman v. C. & N. W. R. Co.*, 112 Wis. 150; *Abrams v. Mil., L. S. & W. R. Co.*, 87 Wis. 485; *Georgia R. R. & B. Co. v. Keener*, 21 S. E. (Ga.) 287; *Ga. So. & F. Ry. Co. v. Johnson*, 48 S. E. (Ga.) 807; *Central of Ga. Ry. Co. v. Murphey*, 113 Ga. 514; 6 Cyc. 401; *In re Release of Rates*, 13 Interstate Commerce Commission Reports 550; Sec. 1510, subdiv. 2, 4 Elliott on Railroads, where, in note 107, the author cites a great number of cases in support of the text.

Counsel for the railroad company also contend that there is no evidence which shows, or tends to show, that the loss of the goods shipped was due to the negligence or want of due care on the part of the defendant. Plaintiff testified, in substance, that the agent of the company who received the shipment informed him that the box would reach New York in about thirteen days, and that he could obtain it at 287 Broadway; that he called at the office of the company at the place designated several times during a period of some three or four weeks after the shipment, and was finally advised by some one in the office of the company that the box was lost. Where a shipper proves delivery and loss, negligence will be presumed unless the carrier is able to prove

that the loss was within exceptions in the contract of shipment.

As before stated,. plaintiff testified that he told the agent of the company the box contained woolen goods, while the agent receiving the shipment says he was told that they consisted of personal effects. On the strength of this conflict in the testimony, counsel for defendant assume that plaintiff misrepresented the character of the shipment, and contend that where the shipper misrepresents the nature of the goods shipped, his claim for damages, in case of loss, is destroyed. There are two reasons why it is unnecessary to determine the question: In the first place, it cannot be assumed, because there was a conflict in the testimony of the plaintiff and the agent of the defendant, that plaintiff was guilty of any misrepresentation regarding the value or character of the contents of the box; and in the second place, the record discloses that this question was not presented for determination to the court below.

From the views expressed on the main proposition considered, it is unnecessary to notice in detail the remaining questions urged by counsel for the defendant company.

The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE HILL concur.

Decided February 6, 1911; rehearing denied April 3, 1911.