No. 19,748.

JEFFERSON COUNTY BANK OF LAKEWOOD, COLORADO *v.*
ARMORED MOTORS SERVICE, ET AL.
(366 P. [2d] 134)

Decided November 13, 1961.

Messrs. YEGGE, HALL AND SHULENBURG, Mr. ROBERT YEGGE, for plaintiff in error.

Messrs. WORMWOOD, O'DELL AND WOLVINGTON, Mr. JOHN J. GIBBONS, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

THE parties here occupy the positions they had in the trial court and will be so referred to.

The trial court entered judgment for plaintiff for $30,000.00, with interest. Plaintiff, being dissatisfied with the amount of the award, seeks reversal of the judgment and a remand with directions that the trial court enter judgment for $165,450.00, with interest. Defendants, also dissatisfied with the entry of judgment against them in the amount of $30,000.00, seek reversal contending that no sufficient showing was made authorizing the entry thereof.

Plaintiff is a bank duly organized under the corporate laws of the State of Colorado and has its principal place of business in Lakewood, near Denver. The defendants compose a co-partnership and are engaged in transporting moneys and securities by armed guards in armored trucks between banking institutions in the Denver metropolitan area. Rates charged are in ratio to the maximum liability to the customer for each shipment entrusted to defendants, who furnished the armored car service to plaintiff. The duties and responsibilities of the parties are set forth in a written contract which provided, inter alia, that: The Bank would pay $35.00 per month for ten round trip pickups at the Bank and deliveries to a designated consignee; additional or special

trips would be furnished at the rate of $4.00 per trip; $30,000.00 to be the maximum liability for each sealed shipment entrusted to defendants' possession by the Bank (excluding any amounts collectible under other policies carried by the Bank), and should the Bank entrust property to defendants in excess of $30,000.00, such excess amount would be the complete responsibility of the Bank.

On May 26, 1959, armed guard employees drove defendants' armored truck to plaintiff's bank. From the armored car the guards loaded twenty bags of silver on a cart and took them into the bank and delivered them to plaintiff's employees. The guards then receipted for sixteen sealed bags of currency and coins consigned to a bank in Denver, took the sixteen bags to the armored truck outside, placed them in the truck, took out twenty more bags of silver, locked the truck, and carted the bags of silver into the bank. When the guards returned to the armored truck moments later, they found that four of the sixteen bags they had placed in the truck had been taken by unknown persons. The bags stolen contained currency in the sum of $165,450.00; coins in the amount of $1800.00 were not taken.

Plaintiff bank carried a Banker's Blanket Bond with Maryland Casualty Company. On June 4, 1959, the obligor paid the bank the full sum of its loss, $165,450.00. When payment was made the Bank signed a "Loan Receipt," which is essentially a subrogation, by which the Bank obligated itself to prosecute suit, at the expense of and under the exclusive direction and control of Maryland Casualty Company, against such persons or parties responsible for the Bank's loss, and to repay to Maryland Casualty Company any net recovery.

This action was filed July 20, 1959, and was tried to the court commencing November 1, 1960. Pertinent findings of the trial court were that the missing bags contained $165,450.00, the property of plaintiff, and that the contract clauses limiting defendants' liability to

$30,000.00 were valid and enforceable; that plaintiff should have interest from May 26, 1959, and entered judgment accordingly.

The principal question to be determined is: In a factual situation as is presented here, can the defendants limit their liability to the sum of $30,000.00?

Reduced to its essentials, the Bank contends: (1) That defendants were negligent in failing to deliver to the consignee the moneys entrusted to them, as a result of which the Bank's $165,450.00 was stolen; (2) that a bailee cannot by contract limit his liability for negligence, and the provisions of the contract between these parties endeavoring to do so was invalid; and (3) that plaintiff should have judgment against defendants for the full amount of $165,450.00 with interest.

There is authority for the proposition that in bailment cases, contracts attempting to limit liability for one's own negligence cannot be enforced. To do so would be against public policy. This doctrine is usually applied in circumstances where a public duty is involved and where the bailee is required to employ a uniform system in rendering services to the public in general, such as common carriers and warehousemen who endeavor to limit liability by written memoranda signed by the bailor, or by posted signs disclaiming liability, and where the relative bargaining power of the parties is unequal or restricted. The case at bar does not come within purview of the rule.

█ The Bank and the defendants entered into a private contract negotiated on a basis of equal bargaining power, knowledge of facts, and with a thorough understanding of the import of the contract provisions. The variable charges made for the armored car service were in proportion to the maximum liability assumed. The contract spelled out with particularity the terms upon which the parties were dealing, including the provision that thirty thousand dollars, " * * * shall be the absolute maximum liability under this contract, * * * " and

should the Bank entrust property to the defendants in excess of \$30,000.00, "such excess amount shall be the complete responsibility of" the Bank. The contract is a reasonable one, was fairly made, and does not contravene public policy.

█ The principle to be applied here is correctly stated in 6 Am. Jur. Sec. 174, p. 291, as follows:

"While, in the absence of a special agreement, the law of bailments outlines definitely the degree of responsibility imposed on the parties to a bailment, as, for example, that of a bailee for the care of the thing bailed, this does not prevent the parties from making their own contracts in reference to their mutual rights and liabilities under bailments of property as well as in reference to other subjects. Generally speaking, they may by express contract enlarge, abridge, qualify, or supersede the obligations which otherwise would arise from the bailment by implication of law, so long as such contract does not violate the law or contravene public policy, and so long as it is actually a part of the contract of bailment and is expressed in clear and unmistakable language. A valid special contract of bailment prevails against general principles of law applicable in the absence of an express agreement."

*Union Pacific Ry. Co. v. Stupeck,* 50 Colo. 151, 114 Pac. 646, employs the reasoning of *Hart v. Penn. R.R. Co.,* 112 U.S. 331, and emphasizes that the limitation of liability rule sometimes finds validity even in common carrier cases. There it was said, quoting from the *Hart* case:

" 'The distinct ground of our decision in the case at bar is, that where a contract of the kind signed by the shipper is fairly made, agreeing on a valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in cases of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing

a due proportion between the amount for which the carrier may be responsible and the freight he receives. * * * ' "

Another question that requires consideration relates to defendants' objection to the allowance of interest from the date plaintiff's money disappeared. C.R.S. '53, 73-1-2, provides in part:

"Creditors shall be allowed to receive interest, * * * for all moneys after they become due, on any bill, bond, promissory note or other instrument of writing * * *."

The liabilities of defendants are exclusively controlled by the contract which they entered into. Under the terms of that agreement the amount which defendants were obligated to pay became due the day the money disappeared from the truck. Accordingly, plaintiff was entitled to interest on that obligation, arising under the "instrument of writing," from and after that date.

In view of our determination of the main question involved, other matters urged in the briefs and presented in oral arguments need not be considered.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DAY concur.