**UNITED SERVICES AUTOMOBILE ASSOCIATION (USAA); and Leslie Branch and Barbara Bennett, Husband and Wife, Appellants,**

v.

**ADT SECURITY SERVICES, INC.; and ADT Security Services (South), Inc., Appellees.**

No. 2005–CA–001418–MR.

Court of Appeals of Kentucky.

Sept. 8, 2006.

Discretionary Review Denied by Supreme Court Jan. 16, 2008.

Clayton O. Oswald, J. Warren Keller, London, KY, for appellant.

Stephen E. Embry, Bridget H. Papalia, Louisville, KY, of counsel Mordecai D. Boone, Kansas City, MO, for appellee.

Before COMBS, Chief Judge; SCHRODER, Judge; MILLER, Special Judge.[1]

## OPINION

MILLER, Special Judge (Assigned).

United Services Automobile Association ("USAA"), Leslie Branch ("Branch") and Barbara Bennett ("Bennett"), husband and wife, bring this appeal from an order of the Fayette Circuit Court granting summary judgment for appellees, ADT Security Services, Inc. and ADT Security Services (South), Inc. (collectively "ADT"). For the reasons stated below, we affirm.

We are to determine whether a limitation-of-liability clause in an alarm system contract is valid and enforceable under Kentucky law.

## BACKGROUND

Branch and Bennett were insured by USAA under a homeowner's insurance policy. On March 1, 1997, the residence of Branch and Bennett located at 3217 Tates Creek Road, Lexington, Kentucky, was heavily damaged by an accidental fire. At the time of the fire, the residence was equipped with an ADT fire alarm system.[2]

---

1. Retired Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution.

2. Appellants do not allege that the fire was caused by appellees' fire alarm system.

ADT furnished and retained title to the system, charging an initial installation fee and a monthly fee for service and maintenance.

The contract, dated April 27, 1994, between Branch and Bennett and ADT contained a clause purporting to limit ADT's liability to $250.00 as liquidated damages in the event its equipment failed to function properly.[3] It is undisputed that the system failed to alert the ADT monitoring service or the local fire department of the March 1 fire. An investigation of the fire determined that it was accidental and most likely caused by faulty wiring of the home, not the alarm system. Additionally, an examination of the alarm system was conducted to determine what might have caused its failure. It was determined that the most likely cause of the alarm system failure was a malfunction of the "microprocessor" inside the alarm monitor control panel.

USAA subsequently paid approximately $885,000 to Branch and Bennett under the terms of their insurance contract. On October 8, 1999, USAA brought a subrogation action, joined by Branch and Bennett, against ADT to recover their losses. In their complaint, appellants stated claims based upon breach of warranty, strict liability, and negligence. On May 9, 2005, the circuit court entered an order granting summary judgment to appellees. This appeal followed.

### STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ky. R. Civ. Proc. (CR) 56.03. The circuit court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky. 1991) (citations omitted). On appeal, the standard of review is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996).

### CONTRACT OF ADHESION

First, Appellants contend that the contract for alarm service was one of adhesion; perforce, the limitation of liability provision should be held for naught. We disagree.

Generally, a contract of adhesion is a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it. See *Conseco Finance Servicing Corp. v. Wilder,* 47 S.W.3d 335, 342 (Ky.App.2001) (citing *Patterson v. ITT Consumer Financial Corporation,* 14 Cal.App.4th 1659, 18 Cal. Rptr.2d 563, 565 (1993) (citation and internal quotation marks omitted)). Here, Branch and Bennett were not presented with a "take-it-or-leave-it" proposal. Indeed, the contract provided that they could pay an additional amount in exchange for ADT assuming greater liability:

IF THE CUSTOMER DESIRES ADT TO ASSUME A GREATER LIABILITY, ADT SHALL AMEND THIS

---

**3.** The alarm system components included a control panel, operating touch-pads, motion sensors, and smoke and heat detectors.

AGREEMENT BY ATTACHING A RIDER SETTING FORTH THE AMOUNT OF ADDITIONAL LIABILITY AND THE ADDITIONAL AMOUNT PAYABLE BY THE CUSTOMER FOR THE ASSUMPTION BY ADT OF SUCH GREATER LIABILITY PROVIDED, HOWEVER THAT SUCH RIDER AND ADDITIONAL OBLIGATION SHALL IN NO WAY BE INTERPRETED TO HOLD ADT AS AN INSURER.[4]

Branch and Bennett could have bargained with ADT for more favorable terms, but chose not to do so. Thus, we are of the opinion that the contract is not one of adhesion.

### UNCONSCIONABILITY

Next, Appellants argue that the limitation-of-liability provision should be rejected as unconscionable. We disagree.

■ It is settled law that, absent fraud in the inducement, a written agreement duly executed by the party to be bound, who had an opportunity to read it, will be enforced according to its terms. *See Cline v. Allis–Chalmers Corporation,* 690 S.W.2d 764 (Ky.App.1985). A narrow exception to this rule is the doctrine of unconscionability. The doctrine is

> used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain. . . .

*Louisville Bear Safety Service, Inc. v. South Central Bell Telephone Company,* 571 S.W.2d 438, 440 (Ky.App.1978) (quot-

ing *Wille v. Southwestern Bell Telephone Co.,* 219 Kan. 755, 549 P.2d 903 (1976)).

■ Here, the limitation-of-liability clause is not one-sided, oppressive nor unfairly surprising. It states:

LIMIT OF LIABILITY—IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER, THAT INSURANCE, IF ANY SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF THE CUSTOMER'S PREMISES. ADT MAKES NO GUARANTY OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OR MERCHANTABILITY OR FITNESS THAT THE SYSTEM OR SERVICES SUPPLIED, WILL AVERT OR PREVENT OCCURRENCES OR THE CONSEQUENCES THEREFROM, WHICH THE SYSTEM OR SERVICE IS DESIGNED TO DETECT. IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE ACTUAL DAMAGES, IF ANY, WHICH MAY PROXIMATELY RESULT FROM FAILURE ON THE PART OF ADT TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER. THE CUSTOMER DOES NOT DESIRE THIS CONTRACT TO PROVIDE FOR FULL LIABILITY OF ADT AND AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE, OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES OR CONSEQUENCES THEREFROM, WHICH THE SER-

---

**4.** Alarm Service Agreement, ¶ 7. The actual font size of the original contract text is approximately half the size presented here.

VICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT; THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10 OF THE ANNUAL SERVICE CHARGE OR $250, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY, AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, OF ADT, ITS AGENTS OR EMPLOYEES .... [5]

The limitation-of-liability language is located on the back of the contract document. Branch signed the contract on the bottom front of the document. Directly to the left and above Branch's signature the contract states in all capital letters and bold print, **"ATTENTION IS DIRECTED TO THE LIMITED WARRANTY, LIMIT OF LIABILITY AND OTHER CONDITIONS ON REVERSE SIDE."** We note that this language stands separate and apart from the rest of the paragraphs and is easily readable. Additionally, while the font size of the limitation-of-liability text on the back of the document is relatively small, it is not unreadable. The limitation-of-liability clause, being composed of approximately 350 words, is not

unduly lengthy nor does it contain oppressive terms couched in vague or obscure language. Branch, a highly educated medical doctor, testified that he was given the opportunity to, and did, read the document before signing it. Appellants chose to forego their prerogative to impose additional liability upon ADT for failure of its service or equipment.

■ Unconscionability determinations are fact specific and we address such claims on a case-by-case basis. *See Conseco*, 47 S.W.3d at 342 (citing *Forsythe v. BancBoston Mortgage Corporation*, 135 F.3d 1069 (6th Cir.1997)). Under these facts, we are of the opinion that the contract cannot properly be characterized as unconscionable.

### *LIQUIDATED DAMAGES*

Appellants also aver that the limitation-of-liability clause amounts to an unenforceable "penalty" rather than "liquidated damages." We disagree.

■ A provision in a contract providing for liquidated damages will be enforced, provided it is in actuality liquidated damages and not a penalty. If such provision is in fact a penalty it will not be enforced and the injured party will be entitled to recover the actual damages suffered. *See Fidelity & Deposit Co. of Maryland v. Jones*, 256 Ky. 181, 75 S.W.2d 1057, 1060 (1934). *See also, Steffen v. United States*, 213 F.2d 266, 270 (6th Cir. 1954) (citing Restatement, Contracts § 339 (applying Kentucky law)). Where, at the time of the execution of the contract, damages may be uncertain in character or amount, or difficult to reasonably ascertain, a provision for liquidated damages will be enforced, provided the amount

---

**5.** Alarm Service Agreement, ¶ 7. The actual font size of the original contract text is approximately half the size presented here.

agreed upon is not greatly disproportionate to the injury which might result. *See Elizabethtown Lincoln Mercury v. Jones,* 313 Ky. 321, 231 S.W.2d 42 (1950); *Coca-Cola Bottling Works v. Hazard Coca-Cola Bottling Works,* 450 S.W.2d 515 (Ky.1970). *See also, Gustav Hirsch Organization, Inc. v. East Kentucky Rural Electric Co-op. Corp.,* 201 F.Supp. 809 (D.C.Ky.1962)(applying Kentucky law).

■ Here, appellants and appellees both agreed that "if ADT should be found liable for loss, damage or injury due to a failure of *service or equipment* in any respect, its liability shall be limited to ... $250 ... as the agreed upon damages and not as a penalty" (emphasis added). At the time of the execution of the contract, appellees assumed a duty to install and monitor the alarm system in the appellant's home. The $24.00 per month fee appellants paid to appellees was based solely upon the cost of the monitoring service and not the value of the home or its contents. Damages based on a breach of the contract by the appellees would have been difficult, if not impossible, to ascertain because they did not contract to assume the duties of an insurer and did not know the value of the home, its contents, or the extent of any possible fire damage that might result. Additionally, the $250.00 limitation of liability amount represents nearly one year of monitoring fees and is reasonably proportionate to the damages expected from a breach of a $24.00 per month monitoring agreement. Accordingly, we hold that the $250.00 contemplated under the agreement is a proper measure of liquated damages and does not constitute an unenforceable penalty.

## PUBLIC POLICY

Appellants also contend that enforcing the limitation-of-liability clause would be contrary to Kentucky's public policy of allowing recovery for damages caused to persons or property. We disagree.

■ Appellants rely on Kentucky's Product Liability Act, Kentucky Revised Statutes ("KRS") 411.300 *et seq.*, for the proposition that they can recover from appellees for the "manufacture, sale, and/or installation of a defective product, namely the ADT alarm system." However, the clear import of the contract is that it is a contract for services only. ADT agreed to supply the fire alarm system, but by the clear terms of the contract, title to the control set remained with ADT. The alleged defective "product", the fire alarm system control set, remained the property of ADT. The contract obligated ADT only in the service and maintenance of the system.

We have held that "to prevail in an action based upon strict products liability, a plaintiff must establish: (1) that there is a 'product,' ... which (5) results in physical harm to the ultimate user or consumer or his property." *Radcliff Homes, Inc. v. Jackson,* 766 S.W.2d 63, 68 (Ky.App.1989)(citing Restatement (Second) of Torts 402A (1965)). Thus, because this contract involves a contract for services, no cause of action can be maintained based on strict liability. Similarly, the Uniform Commercial Code is inapplicable as it applies only to contracts for the sale of goods and does not apply to a contract for services. *See* KRS 355.2–201 and KRS 355.2–105. The Code affords no basis for an action for breach of warranty.

■ We now decide whether appellants can maintain an action for negligence. Under Kentucky law a party to a contract may agree to release another from liability for ordinary or gross negligence, but not for willful or wanton negligence or where contrary to public policy. *See Cobb v. Gulf Refining Co.,* 284 Ky. 523,

145 S.W.2d 96 (1940); *Greenwich Ins. Co. v. Louisville & N.R. Co.*, 112 Ky. 598, 66 S.W. 411 (1902); *Jones v. Hanna*, 814 S.W.2d 287 (Ky.App.1991); *Hargis v. Baize*, 168 S.W.3d 36, 47 (Ky.2005); and, *Donegan v. Beech Bend Raceway Park, Inc.*, 894 F.2d 205 (6th.Cir.1990) (applying Kentucky law). Exceptions to this rule include:

> (1) Contracts for exemption from liability for a willful breach of a statutory duty; (2) contracts between master and servant relating to negligent injury of the servant in the course of his employment; and (3) contracts where one of the parties (such as a railroad) is charged with a duty of public service, and the bargain relates to negligence in the performance of its duty to the public.

*Cobb*, 145 S.W.2d at 99 (citing Restatement of Contracts § 575). Contracts exempting from liability for negligence are not favored and are strictly construed against the parties relying on them. *See id.; Hargis*, 168 S.W.3d at 47. The wording of the release must be "so clear and understandable that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away; it must be unmistakable." *Hargis*, 168 S.W.3d at 47 (citing 57A Am.Jur.2d, *Negligence* § 52).

In *Hargis*, our Supreme Court cited four alternative factors as determinative in upholding a pre-injury release: (1) it explicitly expresses an intention to exonerate by using the word "negligence;" or (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision. *Id.*

■ Here, there is no allegation that the appellees were guilty of willful or wanton negligence. Nor does the contract involve a statutory duty, master/servant relationship, or public service duty. Moreover, the wording of the limitation-of-liability clause is clear and easily understandable to an ordinarily prudent and knowledgeable person. It satisfies all of the alternative factors set out in *Hargis*. The clause explicitly expresses an intention to exonerate or limit ADT's liability by using the word "negligence;" it clearly and specifically indicates that liability is limited for injury caused by ADT's own conduct; protection of ADT against its own negligence is the only reasonable construction of the contract language; and, the hazard experienced, failure of the ADT alarm system, was clearly contemplated by the contract provision. Under these facts, the limitation-of-liability clause in the alarm system contract is controlling and properly enforceable.

Finally, there is a broad public policy of freedom of contract in Kentucky and permitting alarm companies to limit their liability does not leave consumers unprotected. Consumers are encouraged, and indeed are many times required, to purchase insurance to protect their property interests from fire and other hazards.[6] Thus, we conclude that the limitation-of-liability provision in ADT's alarm service contract does not contravene public policy.

### CONCLUSION

There appears to be no case under Kentucky law specifically deciding the issue of

---

**6.** Moreover, denying the enforceability of such limitation-of-liability contracts may well result in prohibitively expensive alarm systems, which clearly would be contrary to the public interest.

whether limitation-of-liability clauses in alarm service agreements are enforceable. However, other jurisdictions have faced the issue. The majority have determined that such clauses are valid and enforceable. *See generally,* Martin J. McMahon, Annotation, *Liability of Person Furnishing, Installing, or Servicing Burglary or Fire Alarm System for Burglary or Fire Loss,* 37 A.L.R.4th 47 (1985). We see no reason to depart from the majority rule.

For the foregoing reasons the judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.