UNITED STATES FIRE INSURANCE CO.; Commonwealth Insurance Co.; Core–Mark Midcontinent, Inc.; and Core–Mark International, Inc., Plaintiffs–Appellants,

v.

SONITROL MANAGEMENT CORPORATION, n/k/a Sonitrol Corporation, Defendant–Appellee.

Core–Mark Midcontinent, Inc. and Core–Mark International, Plaintiffs–Appellants,

v.

Sonitrol Management Corporation, n/k/a Sonitrol Corporation, Defendant–Appellee.

Nos. 07CA0060, 07CA0061.

Colorado Court of Appeals, Div. II.

July 24, 2008.

argue the same legal issues in similar briefs, with similar answers from Sonitrol. Accordingly, we have consolidated the appeals.

### I. Background and Proceedings

#### A. Course of Dealing Between Core–Mark and Sonitrol

Core–Mark distributes merchandise to convenience stores. It leased approximately 90,000 square feet of a 120,000 square foot warehouse for storing inventory. The Insurers insured the warehouse and inventory.

Sonitrol markets security and fire alarm services, and in 1995 contracted with Core–Mark to install and monitor an alarm system to protect the warehouse.

Pertinent provisions of the contract are as follows:

12. LIMITATIONS OF DAMAGES:

A. It is understood and agreed by the parties hereto that DEALER [Sonitrol] is not an insurer and that insurance, if any, covering personal injury and property loss or damage on CLIENT'S premises shall be obtained by CLIENT [Core–Mark], at CLIENT'S sole expense; that the payments provided for herein are based solely on the value of the service as set forth herein and are unrelated to this value of CLIENT'S property or the property of others located on CLIENT'S premises;

. . .

C. CLIENT UNDERSTANDS AND AGREES THAT IF DEALER SHOULD BE FOUND LIABLE FOR ANY LOSS OR DAMAGE DUE FROM A FAILURE TO PERFORM ANY OF ITS OBLIGATIONS OR A FAILURE OF THE EQUIPMENT TO PROPERLY OPERATE, DEALER'S LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO THE TOTAL OF ONE–HALF YEAR'S MONITORING PAYMENTS, OR FIVE HUNDRED DOLLARS ($500) WHICHEVER IS THE LESSER, AND THIS LIABILITY SHALL BE EXCLUSIVE AND SHALL APPLY IF LOSS OR DAMAGE, IRRESPECTIVE OF CAUSE

Davis Graham & Stubbs, LLP, Andrew M. Low, Elizabeth H. Titus, Denver, Colorado; Cozen O'Connor, Thomas M. Dunford, Denver, Colorado; Pirece & Weiss, LLP, Brian S. Letofsky, Anaheim, California, for Plaintiffs–Appellants.

Hall & Evans, L.L.C., Alan Epstein, Brian P. Molzahn, Devi C. Yorty, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge NEY.*

In this case concerning a contract for burglar and fire alarm services, two groups of plaintiffs who had filed separate actions appeal two orders for summary judgment issued in favor of the alarm company, Sonitrol Management Corporation (Sonitrol). The two cases were consolidated in the district court. Plaintiffs contend on appeal that the district court incorrectly applied the economic loss rule and erroneously enforced a limitation of liability clause. We agree in part, reverse the judgments, and remand for further proceedings.

Plaintiffs in the first case, United States Fire Insurance Co., Commonwealth Insurance Co., Lexington Insurance Co., United Insurance Co., United Fire & Casualty, Tartan Products Co., and Western Innovations, Inc. (Insurers), and the plaintiffs in the second case, Core–Mark Midcontinent, Inc. and Core–Mark International, Inc. (Core–Mark),

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSONS OR PROPERTY FROM PERFORMANCE OR NON–PERFORMANCE OF ANY OF DEALER'S OBLIGATIONS OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, OF DEALER, ITS EMPLOYEES OR AGENTS.

Sonitrol's services included remote monitoring of microphones that could detect sounds made by intrusions into the warehouse. These microphones, or audio detectors, would send an audio activation signal when they detected a sound exceeding a minimum volume, and record and store five seconds of the audio. The alarm system would also make an automated telephone call to a central monitoring facility. The operators monitoring the console in that facility were instructed to replay the five seconds of stored audio recording and listen to live audio transmission for at least forty-five seconds. If the operator heard a burglary in progress, he or she would dispatch the local police. However, if the operator determined the activation was a false alarm, the operator could reset the alarm. Resetting the alarm erased the stored audio and terminated the telephone connection to the monitored premises.

In December 2002, a burglar entered Core–Mark's warehouse while it was closed over the weekend. He returned a little later with two confederates, and the three looted the warehouse for approximately three hours. They made no effort to be quiet, but shouted to each other, threw boxes around, and used a noisy gravity chute lined with steel rollers to move boxes. When they were ready to leave, one of the burglars smashed boxes of flammable liquids, pulled down large jugs of methanol, and set two fires at 8:42 a.m. The fire department arrived on the scene eleven minutes later at 8:53 a.m., alerted by a passerby, but it was too late to save the property.

During this episode, Sonitrol's off-site monitoring center received audio activations caused by the noise the burglars created. Two different Sonitrol employees received the alarms and reacted as follows: (1) audio activation at 1:35 a.m., no replay of stored audio, alarm reset in 36 seconds, no call to police; (2) audio activation at 6:50 a.m., no replay of stored audio, alarm reset in 4 seconds, no call to police; (3) audio activation at 7:29 a.m., no replay of stored audio, alarm reset in 40 seconds, no call to police; (4) audio activation at 7:56 a.m., no replay of stored audio, alarm reset in 1 minute and 49 seconds, no call to police; (5) audio activation at 8:36 a.m., no replay of stored audio, alarm reset in 2 minutes and 10 seconds, no call to police; (6) audio activation at 8:44 a.m., operator replayed stored audio, no call to police; (7) 8:46 a.m. (four minutes after fire started), the telephone connection between warehouse and monitoring center was severed. At 9:05, the Sonitrol employee called the fire department, which had been at the scene for twelve minutes.

Despite the fire department's efforts, the fire burned for a week and destroyed the building and all the inventory, resulting in a loss of approximately $20 million.

## B. Course of Litigation

Core–Mark and the Insurers filed separate lawsuits against Sonitrol. As pertinent to this appeal, they asserted claims for (1) negligence, (2) gross negligence, and (3) breach of contract. These lawsuits were consolidated with a number of others related to the warehouse fire.

The district court granted Sonitrol's motion to dismiss Core–Mark's claims for negligence and gross negligence. Sonitrol moved for summary judgment against both Core–Mark and the Insurers, which was granted. *Cf. Western Innovations, Inc. v. Sonitrol Corp.,* 187 P.3d 1155 (Colo.App.2008) (in litigation arising from the same incident, tort claims of another tenant, not a party to the contract between Sonitrol and Core–Mark, summarily dismissed).

In granting summary judgment on Core–Mark's claims, the district court concluded as pertinent here: (1) the economic loss rule applied to bar tort claims; and (2) the limitation of damages clause in the contract was enforceable. Although the district court acknowledged Core–Mark's argument with re-

spect to willful and wanton conduct, it did not address that argument.

In granting summary judgment on the Insurers' claims, the district court concluded as pertinent here: (1) the economic loss rule barred tort claims (applying a previous order as the law of the case); and (2) the limitation of liability clause was enforceable as to the Insurers as well as Core–Mark (adopting the reasoning of a previous order).

The parties dismissed their remaining claims, limited by the district court's orders to $500 (as provided under the contract), to the extent and only to the extent they were not previously dismissed by the court's orders. The district court issued a C.R.C.P. 54(b) certification, stating the orders for summary judgment fully disposed of the claims against Sonitrol.

Core–Mark and the Insurers appeal only the orders granting summary judgment.

## C. Standard of Review

We review a district court's grant of summary judgment de novo. *A.C. Excavating v. Yacht Club II Homeowners Ass'n,* 114 P.3d 862, 865 (Colo.2005). "Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that no issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Id.* "The nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party." *Id.*

## II. Economic Loss Rule

■ Core–Mark and the Insurers contend the district court erred in dismissing their negligence claims under the economic loss rule, because Sonitrol owed an independent duty of care. Sonitrol argues that the duty specified in the burglar alarm contract and the alleged duty in tort are identical, and so there is no duty independent of that created by the contract. We agree with Sonitrol.

■ "Economic loss is defined generally as damage other than physical harm to persons or property." *Parr v. Triple L & J*

*Corp.,* 107 P.3d 1104, 1108 (Colo.App.2004). "The proper focus in an analysis under the economic loss rule is on the source of the duties alleged to be breached." *Grynberg v. Agri Tech, Inc.,* 10 P.3d 1267, 1269 (Colo. 2000). "The essential difference between a tort obligation and a contract obligation is the source of the parties' duties." *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 72 (Colo. 2004). "Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property." *Id.* "[A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *A.C. Excavating,* 114 P.3d at 865. "In distinguishing between a tort obligation and a contract obligation, it is essential to discern the source of the party's duty." *Id.*

The contract between Sonitrol and Core–Mark defined Sonitrol's duties with respect to reasonable care.

5. DEALER agrees to monitor the system from the time CLIENT causes the system to be activated until CLIENT causes the system to be deactivated. Upon receipt of a signal indicating an unauthorized entry into CLIENT's premises or an emergency, the DEALER's operator will use reasonable efforts to identify the signal and, when warranted, will transmit notice of said signal to the local authority having jurisdiction.

Accordingly, the contract contains the duty that Sonitrol allegedly breached. Sonitrol's duties to Core–Mark were defined under the contract, and did not exist except for the contract. *See BRW, Inc.,* 99 P.3d at 74 (BRW contract required BRW to meet a standard of care and so contained the duty that BRW allegedly breached). Core–Mark does not state an independent tort duty because the alleged tort duty and the duty outlined in the contract are identical. Thus, Core–Mark's losses are economic losses proceeding from the breach of a contractual duty, and Core–Mark's tort claim is barred

by the economic loss rule. *A.C. Excavating,* 114 P.3d at 865.

### III. Enforceability of Limitation of Damages Clause

■ Core–Mark and the Insurers contend the district court erred in holding that the limitation of liability clause in the contract with Sonitrol was enforceable, because the issue of whether Sonitrol acted willfully and wantonly should have been decided by the fact finder. We agree.

### A. Nature of Limitation of Damages Clause

Sonitrol argues that the limitation of liability clause in the contract is not an exculpatory clause but a liquidated damages clause, and therefore the analysis for willful and wanton conduct does not apply. Accordingly, Sonitrol contends the limitation of liability clause is enforceable regardless of its own conduct. We disagree.

■ Exculpatory clauses insulating a party from its own negligence, though disfavored, are permitted in Colorado if one party is not at a significant disadvantage in bargaining. *Chadwick v. Colt Ross Outfitters, Inc.,* 100 P.3d 465, 467 (Colo.2004) (upholding exculpatory agreement as to simple negligence). However, an exculpatory clause is against public policy if it enforces a release from willful and wanton conduct. *Id.* at 468; *B & B Livery, Inc. v. Riehl,* 960 P.2d 134, 138–39 (Colo.1998) (enforcing an exculpatory clause for simple negligence but remanding for findings on willful and wanton negligence claims); *White v. Hansen,* 837 P.2d 1229, 1233 (Colo.1992)(separating willful and wanton conduct conceptually from ordinary negligence); *Jones v. Dressel,* 623 P.2d 370, 376 (Colo.1981).

In the present case, we must consider whether this public policy exception for willful and wanton conduct that applies to an exculpatory clause also applies to a limitation of liability clause. Although this issue has not previously been addressed in Colorado, we conclude that the general rule applies to both exculpatory and limitation of liability clauses. *Fox Alarm Co. v. Wadsworth,* 913 So.2d 1070, 1080 (Ala.2005) (applying analysis of wanton conduct to limitation of liability clause); *Saia Food Distrib. & Club, Inc. v. SecurityLink from Ameritech, Inc.,* 902 So.2d 46, 49 (Ala.2004) (reading contract language as a limitation of liability provision and an exculpatory clause); *see Royal Indem. Co. v. Sec. Guards, Inc.,* 255 F.Supp.2d 497, 503 (E.D.Pa.2003)(limitation of liability clause will not cover willful or wanton behavior unless the parties specifically so contracted).

Sonitrol argues that a limitation of liability clause in a burglar alarm contract is in reality a liquidated damages clause, relying on *Niccoli v. Denver Burglar Alarm, Inc.,* 490 P.2d 304, 306 (Colo.App.1971) (not published pursuant to C.A.R. 35(f)) (holding provision was liquidated damages clause rather than penalty). Therefore, Sonitrol argues, the willful and wanton exception should not apply.

■ A liquidated damages clause may be treated as an exculpatory clause, when it denies liability for all but a nominal amount of damages. *Tessler & Son, Inc. v. Sonitrol Sec. Sys.,* 203 N.J.Super. 477, 497 A.2d 530, 532 (1985) (similar contract with limit of $250 may not bar suit for willful and wanton misconduct); *see Sommer v. Fed. Signal Corp.,* 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365, 1368 (1992)(referring to a "liquidated damages" clause as an "exculpatory clause"). Moreover, a liquidated damages clause may not be enforced where it attempts to limit one party to nominal damage in a claim for willful or wanton negligence. *United Servs. Auto. Ass'n v. ADT Sec. Servs., Inc.,* 241 S.W.3d 335, 341 (Ky.Ct.App.2006)($250 damage limitation in alarm contract as liquidated damages provision).

We need not decide here whether the clause in question is a limitation of liability clause, a liquidated damages clause, or an exculpatory clause, because the general rule applies to all of them. We hold that if the effect of such a clause is to insulate a party from its own negligence, it does not shield against a claim for willful and wanton conduct. *See B & B Livery,* 960 P.2d at 138–39; *Jones,* 623 P.2d at 375.

Sonitrol's argument that the damage limitation in its policy is not a nominal sum is in relevant to our holding that clauses insulating a party from liability for its own willful and wanton conduct are against public policy. *Cf. Jefferson County Bank v. Armored Motors Serv.*, 148 Colo. 343, 346, 366 P.2d 134, 135 (1961) (limitation of liability clause for $30,000 enforceable for negligence).

Therefore, although the district court properly found that the limitation of liability clause shielded Sonitrol from claims for simple negligence, because Core–Mark and the Insurers properly raised the issue of willful and wanton conduct supported by evidence, the district court should not have granted summary judgment before determining the issue of willful and wanton conduct.

### B. Willful and Wanton Conduct

■ Core–Mark and the Insurers contend they have presented ample evidence of a triable issue of fact as to whether Sonitrol's failure to notify emergency services was willful and wanton. Sonitrol contends that, as a matter of law, plaintiffs' allegations amount to simple negligence. Because all inferences from the evidence must be drawn in favor of the nonmoving party, we agree with Core–Mark and the Insurers that a triable issue of fact exists. *See A.C. Excavating*, 114 P.3d at 865.

■ "Willful and wanton conduct is purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of others. Such conduct extends beyond mere unreasonableness." *Forman v. Brown*, 944 P.2d 559, 564 (Colo.App.1996). "Willful and wanton conduct or willful and reckless disregard" means:

conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff.

§ 13–21–102(1)(b), C.R.S.2007; *accord* CJI–Civ. 4th 9:30 (2002).

■ The trier of fact determines whether there has been negligence. *Hesse v. McClintic*, 176 P.3d 759, 764 (Colo.2008). Ordinarily, determining whether a defen-

dant's conduct is willful and wanton is a question of fact. *Forman*, 944 P.2d at 564.

Here, multiple audio activations were received by two different operators over a period of several hours. The operators reset the alarms without listening to recorded audio or live audio, or calling police. On deposition, one operator could offer no explanation of her conduct, and appeared to have little memory of what happened. Had the operators listened, they could have heard the intruders shouting sending boxes along steel rollers, and dropping and smashing merchandise. Even after the last telephone connection was severed by fire, nineteen minutes elapsed before the operator called the fire department.

A jury could conclude this was purposeful conduct committed recklessly with conscious disregard for the rights and safety of others. § 13–21–102(1)(b); CJI–Civ. 4th 9:30; *see Royal Indem. Co.*, 255 F.Supp.2d at 499, 509 (security employee did not contact supervisor upon sounding of four consecutive fire alarms, instead attempting to reset alarms; genuine issue of material fact as to willful or wanton conduct); *New Light Co. v. Wells Fargo Alarm Servs.*, 247 Neb. 57, 525 N.W.2d 25 (1994)(remanding for further proceedings as to whether failure to install fire-sensing device in room with main fire alarm control panel was willful and wanton); *Sommer*, 583 N.Y.S.2d 957, 593 N.E.2d at 1367–68 (untrained dispatcher thought company intended system to be taken out of service and ignored fire signals; question of gross negligence for jury to determine). *But see Fox Alarm Co.*, 913 So.2d at 1080 (failure to notify police of subsequent alarm signals after dispatcher had notified police was not substantial evidence of wantonness).

We also note that although the claim for gross negligence was dismissed with respect to Core–Mark, the claim for breach of contract alleged "willful and wanton disregard for the safety of persons and property at the Core–Mark Warehouse." Thus, Core–Mark properly pleaded willful and wanton conduct.

Giving Core–Mark and the Insurers the benefit of all favorable inferences as we must, we conclude that whether Sonitrol's

conduct was willful and wanton is a question of fact for the jury to determine. *See Forman*, 944 P.2d at 564. Accordingly, we further conclude that the district court was premature in granting summary judgment as to the applicability of the limitation of liability clause.

The summary judgments are reversed, and the cases are remanded to the district court for further proceedings consistent with our holdings herein.

TAUBMAN and ROVIRA *, JJ., concur.